# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Danielle Dubbs             :
                                     :
              v.             :   No. 244 C.D. 2021
                                       :   SUBMITTED: July 9, 2021
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,       :
                     Appellant    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY
SENIOR JUDGE LEADBETTER**                   **FILED: November 16, 2021**

         The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from an order of the Court of Common Pleas of York County that sustained the appeal of Danielle Dubbs (Licensee) from a one-year suspension of her operating privilege pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i),[1] imposed by the

---

[1] Section 1547(b)(1)(i) states, in relevant part:

      (1) If any person placed under arrest for a violation of [S]ection 3802 [of the Vehicle Code, 75 Pa. C.S. §3802 (relating to driving under the influence of alcohol or a controlled substance),] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the [D]epartment shall suspend the operating privilege of the person as follows:

           (i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).

Department because Licensee refused to submit to a chemical test in connection with her arrest for driving under the influence of alcohol or a controlled substance (DUI). The Department argues that common pleas erred by determining that the arresting officer did not have reasonable grounds to believe that Licensee was operating her vehicle while under the influence of alcohol or a controlled substance and, thus, had no basis for requesting that Licensee submit to a chemical test. For the following reasons, we reverse the order of common pleas and reinstate the suspension of Licensee's operating privilege.

By notice mailed on July 21, 2020, the Department informed Licensee that it was suspending her driving privilege for one year pursuant to Section 1547(b)(1)(i) of the Vehicle Code for refusing a chemical test on July 2, 2020. (Reproduced Record "R.R." at 7a-10a.) Licensee appealed the suspension to common pleas. (R.R. at 4a-6a.) Common pleas held a *de novo* hearing on January 27, 2021. (R.R. at 38a.) Licensee did not testify at the hearing.

At the hearing, the Department presented the testimony of the arresting officer, Lester Thomas, Jr., who is a police sergeant with the Lower Windsor Township Police Department (Township Police) in York County. Sergeant Thomas has been employed with the Township Police for 24 years. He is a patrol supervisor and a DUI checkpoint coordinator. (R.R. at 42a.) On July 2, 2020, Sergeant Thomas was dispatched to the scene of an accident. Upon arrival, he "found a single vehicle . . . had hit four parked cars in the Bowles car lot." (R.R. at 43a.) Sergeant Thomas observed Licensee outside of her car attempting to use her cell phone. He "saw that she was uneasy on her feet, so [he] kind of got her arm and assisted her while she was still trying to make phone calls." (R.R. at 43a.) He recognized Licensee as someone he had arrested for DUI in late 2019. (R.R. at 46a-47a.)

2

Sergeant Thomas asked Licensee how the accident occurred, and Licensee responded that she dropped her phone. (R.R. at 43a.) He asked for her license, registration, and insurance information. However, Licensee "was insistent on using the phone. She was getting and receiving calls even after [she was told] to stop." (R.R. at 44a.) Sergeant Thomas described Licensee as "doppled (sic)[,]" meaning that "[s]he was having trouble with her balance and [was] just kind of all over the place." (*Id.*) Sergeant Thomas explained that Licensee "did not smell [of] alcohol, but the way she was acting was just not normal." (*Id.*) Sergeant Thomas noted that Licensee had a small cut over her left eye and that she refused medical treatment. (R.R. at 47a.)

Sergeant Thomas asked Licensee to perform field sobriety tests and she refused. He informed Licensee that based on the way she was acting, if she would not undergo field sobriety tests, he would have to assume she might be under the influence. Sergeant Thomas then transported Licensee to the central booking unit for a blood test. Sergeant Thomas testified that upon their arrival, he read Licensee the DL-26 warnings verbatim[2] and she refused the test. (R.R. at 44a-46a.)

On cross-examination, Sergeant Thomas confirmed that Licensee appeared disoriented when he arrived at the scene. (R.R. at 47a.) He was then asked whether people can be "shook up" after an accident and have balance problems. (R.R. at 48a-49a.) He stated that this was possible, and further agreed that if someone has been injured in an accident, she may not be a good candidate for field sobriety testing because the injury may cause confusion or impairment. (R.R. at 48a-49a, 51a.) He also agreed that many people are involved in accidents due to distracted driving, which do not necessarily relate to DUI. In this case, Sergeant

---

[2] Sergeant Thomas did not indicate when he was dispatched to the accident scene, but testified that the DL-26 warnings were read to Licensee at 9:53 p.m. (R.R. at 45a.)

Thomas noted, Licensee did not smell of alcohol, and she stated that she had not been drinking alcohol and had not "taken anything." (R.R. at 49a-50a.) Sergeant Thomas believed that Licensee had not had any alcohol, but, by the way she was acting, he thought "that she had something on board rather than alcohol." (R.R. at 49a, 52a.)

Sergeant Thomas stated that he underwent training twice through the Advanced Roadside Impaired Driving Enforcement Program ("ARIDE program") and had taken a refresher course in the last five years. (R.R. at 50a.) He explained that standardized field sobriety testing is for basic alcohol observation, and that the ARIDE program teaches advanced roadside impairment skills relating to drug use. (*Id.*) However, Sergeant Thomas noted that he has not taken the drug recognition course and, as such, is not a drug recognition expert. (*Id.*) However, on redirect, Sergeant Thomas noted that several witnesses at the scene told him that Licensee was "staggering around," and he advised that another officer at the scene, Officer Shaun Dickmyer, found prescription pill bottles in Licensee's vehicle. (R.R. at 52a.)

Officer Shaun Dickmyer of the Township Police testified that he arrived at the scene after Sergeant Thomas. Officer Dickmyer stated that it was a clear, warm night and that Licensee had veered from a straight stretch of road into the vehicles parked in the lot. He saw Licensee prior to Sergeant Thomas taking her into custody for DUI and observed that her "eyes were somewhat glassy, glazed over looking . . . ." (R.R. at 55a.)

After Sergeant Thomas "took [Licensee] to get the blood work," Officer Dickmyer remained at the scene to take pictures, interview witnesses, and call for a tow truck. (R.R. at 55a.) Officer Dickmyer explained that he also conducted a search of Licensee's vehicle and found, in the center console, a pill bottle containing

4

tramadol and an empty pill bottle of hydrocodone, both of which were prescribed to Licensee. He stated that both medications were narcotic analgesics that are used to relieve pain, and that based on his past experience with other DUIs involving pain pills, he knew such pills can cause intoxication. Officer Dickmyer reported his findings to Sergeant Thomas. (R.R. at 56a.)[3]

By order and memorandum decision dated February 12, 2021, common pleas granted Licensee's appeal and vacated the suspension of her operating privilege. (R.R. at 79a-81a.) Common pleas ruled that Sergeant Thomas did not have reasonable grounds to believe that Licensee was DUI at the time of her arrest. Common pleas determined that the facts known to Sergeant Thomas at the time of the arrest were that Licensee was involved in an accident, was uneasy on her feet, and was uncooperative when instructed to stop using her phone. While Sergeant Thomas had previously charged Licensee with DUI, common pleas observed that the charge was still pending, and thus, Licensee retained the presumption of innocence as to that charge. Further, common pleas noted, the prescription bottles and pills (collectively, prescription bottles) Officer Dickmyer found in Licensee's vehicle were not discovered until after Licensee's arrest. As such, common pleas determined that the prescription bottles could not have been used by Sergeant Thomas to establish reasonable grounds to believe Licensee was DUI at the time of the arrest.

Following the Department's appeal to this Court, common pleas issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a). (Original Record "O.R." Item No. 3.) Common pleas relied on the analysis set forth in its February 12, 2021 order and memorandum decision, but added that it

---

[3] Officer Dickmyer did not state when or how he informed Sergeant Thomas.

rejected the Department's contention that in considering the totality of the circumstances, Sergeant Thomas could have considered the prescription bottles that were discovered **after** Licensee's arrest. Common pleas stated that it is completely illogical to suggest that reasonable grounds to make an arrest can be based on information obtained after the arrest.

Before this Court, the Department claims that Sergeant Thomas had reasonable grounds to believe that Licensee was driving while intoxicated, and that common pleas erred as a matter of law in ruling otherwise.[4] Specifically, the Department argues that common pleas erred in focusing on the two prescription bottles found in Licensee's vehicle after her arrest, rather than considering the totality of the circumstances that existed at the time of Licensee's arrest in determining whether reasonable grounds existed in this case. We agree.

We begin with a review of the relevant law. Section 3802(d) of the Vehicle Code states:

> **(d) Controlled substances.--**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood any amount of a:
>
>> (i) Schedule I controlled substance, as defined in . . . The Controlled Substance, Drug, Device and Cosmetic Act[, Act of April 14, 1972, P.L. 233, No. 64, *as amended*, 35 P.S. §§ 780-101 – 780-144];
>>
>> (ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual; or

---

[4] Whether reasonable grounds exist is a question of law subject to our plenary review. *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999).

6

> (iii) metabolite of a substance under subparagraph (i) or (ii).
>
> (2) The individual is under the influence of a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.
>
> (3) The individual is under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle.
>
> (4) The individual is under the influence of a solvent or noxious substance in violation of 18 Pa.C.S. § 7303 (relating to sale or illegal use of certain solvents and noxious substances).

75 Pa. C.S. § 3802(d). Section 1547 of the Vehicle Code, commonly referred to as the Implied Consent Law, permits chemical testing of drivers under certain circumstances. 75 Pa. C.S. § 1547. To sustain a suspension of a licensee's operating privilege under Section 1547 of the Vehicle Code, the Department has the burden of proving at the statutory appeal hearing that the licensee

> (1) was arrested for [DUI] by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under [the] influence of alcohol[ or a controlled substance]; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999) (emphasis added). The test for whether a police officer had reasonable grounds to believe that a licensee was operating or in actual physical control of the movement of a vehicle while intoxicated is not very demanding, and it is not necessary for the police officer to be correct in his or her belief. *Dep't of Transp.,*

7

*Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1348 (Pa. Cmwlth. 1990). Reasonable grounds are established when a "police officer, viewing the facts and circumstances as they appeared at the time[ of the arrest], *could have concluded* that the motorist was operating the vehicle while under the influence of intoxicating liquor[ or a controlled substance]." *Banner*, 737 A.2d at 1207 (emphasis added). "While there is no set list of behaviors that a person must exhibit for an officer to have reasonable grounds for making an arrest, case law has provided numerous examples of what this Court has accepted as reasonable grounds in the past, e.g., staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol." *Stancavage v. Dep't of Transp., Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). However, "the absence of one or more of the above-listed *Stancavage* factors does not mean the officer lacks reasonable grounds that the motorist has driven while intoxicated." *Farnack v. Dep't of Transp., Bureau of Driver Licensing*, 29 A.3d 44, 48 (Pa. Cmwlth. 2011). "The arresting officer may [also] rely on behavior that indicates the presence of an entirely different chemical, such as a controlled substance, in determining whether he has reasonable grounds to request . . . [a] blood test." *Id.*

In this case, common pleas focused on the two prescription bottles found in Licensee's vehicle after her arrest in concluding that Sergeant Thomas lacked reasonable grounds to request that Licensee submit to chemical testing. However, Sergeant Thomas's testimony, which common pleas apparently deemed credible and which was based on Sergeant Thomas's professional experience in detecting signs of intoxication, reflects that Sergeant Thomas did not rely on the discovery of the prescription bottles in requesting that Licensee submit to chemical testing. Rather, Sergeant Thomas testified to several independent factors that led to

8

his belief that Licensee "had something on board rather than alcohol[,]" i.e., that she was driving under the influence of a controlled substance, including Licensee's vehicle having hit four parked cars, Licensee's uneasiness on her feet and difficulty balancing,[5] her refusal to cooperate when Sergeant Thomas asked her to stop making phone calls, the small cut on her eye for which Licensee refused medical treatment, the fact that Sergeant Thomas had previously arrested Licensee for DUI,[6] and Licensee's refusal to participate in field sobriety testing.[7]

The totality of the circumstances encountered by Sergeant Thomas during his investigation of the accident supported his decision to request chemical testing of Licensee.[8] Therefore, we find that Sergeant Thomas reasonably could

---

[5] A licensee's unsteadiness on her feet may be considered by an officer. *See Mooney v. Dep't of Transp., Bureau of Driver Licensing*, 654 A.2d 47, 49 (Pa. Cmwlth. 1994).

[6] While a prior DUI arrest may not be sufficient on its own to constitute reasonable grounds, it may be considered along with other factors. *See Gammer v. Dep't of Transp., Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010) (stating that "[t]he unusual location of the vehicle next to the dumpsters at the far end of the parking lot, coupled with [the arresting officer's] two previous arrests of [the licensee] for DUI, only serves to solidify the conclusion that the officers had reasonable grounds . . .").

[7] A licensee's refusal to submit to testing may be considered. *Koutsouroubas v. Dep't of Transp., Bureau of Driver Licensing*, 61 A.3d 349, 353 (Pa. Cmwlth. 2013) (explaining that when a licensee refuses to submit to field sobriety testing, the arresting officer is denied a "meaningful opportunity to observe [the licensee's] coordination and balance").

[8] We also note that Officer Dickmyer's testimony regarding his apparent after-arrest discovery of the two prescription bottles with Licensee's name on them, which testimony common pleas found credible, (R.R. at 80a-81a), only serves to solidify the conclusion that Sergeant Thomas had reasonable grounds to believe that Licensee was driving or operating her vehicle under the influence of a controlled substance. *See Gammer*, 995 A.2d at 384; *see also Lephew v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 846 C.D. 2015, filed Feb. 9, 2016), slip op. at 10-11, n.8 (rejecting the licensee's emphasis on the fact the arresting officer only detected a slight odor of alcohol on the licensee's breath at the hospital despite the officer's extended interaction with the licensee at the scene of the accident, citing *Dep't of Transp., Bureau of Traffic Safety v. Stewart*, 527 A.2d 1119 (Pa. Cmwlth. 1987) (stating that an officer may acquire reasonable grounds to believe that a licensee was DUI at any time during the course of the **(Footnote continued on next page…)**

9

have concluded that Licensee was under the influence of a controlled substance when she crashed her car into four parked vehicles. Accordingly, we reverse the order of common pleas and reinstate the one-year suspension of Licensee's operating privilege.

 

_____

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

interaction with the licensee)). *Lephew* is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Danielle Dubbs               :
                                 :
        v.             :    No. 244 C.D. 2021
                                 :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing,     :
            Appellant   :

## **O R D E R**

AND NOW, this 16th day of November, 2021, the order of the Court of Common Pleas of York County, dated February 12, 2021, is REVERSED, and the SUSPENSION imposed by the Department of Transportation, Bureau of Driver Licensing, is hereby REINSTATED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita